IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC SMITH, and <br> ALLAEDHIN QANDAH, <br><br> Plaintiffs, <br><br> v. <br><br> ST. CHARLES COUNTY, MISSOURI, <br> LIEUTENANT MICHAEL MCKEE, <br> in his individual capacity, <br> OFFICER JEFFERY CAST, <br> in his individual capacity, <br> OFFICER JAKE GILLETT, <br> in his individual capacity, and <br> OFFICER CLINTON GRAEBNER, <br> in his individual capacity, <br><br> Defendants. | Case No. 4:18-cv-00171-JCH <br><br> **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. In January 2017, a St. Charles County Jail ("SCCJ") corrections officer violently grabbed Plaintiff Eric Smith from behind and slammed Mr. Smith's head against a metal stool. As a result of this injury and with improper medical care in the jail, Mr. Smith suffered a potentially fatal blood accumulation in his skull.

2. On December 15, 2014, another SCCJ corrections officer electronically unlocked Plaintiff Alleadhin Qandah's cell to allow an inmate to attack Mr. Qandah. Mr. Qandah was also subjected to eight months of restrictive solitary confinement and harassed based on his religion, race, and national origin.

3. These instances of abuse put both incarcerated Plaintiffs' lives at risk and demonstrate that Defendant St. Charles County systematically and pervasively fails to train, monitor, supervise,

1

or discipline its officers. The result of these institutional failures is that individuals confined in SCCJ risk great physical and psychological harm.

4. Plaintiffs Mr. Smith and Mr. Qandah bring this civil rights lawsuit against Defendant St. Charles County and individual Defendants alleging that human beings are unconstitutionally detained at SCCJ without regard for their physical and psychological safety. The stories of abuse presented by Plaintiffs exemplify the unconstitutional policies and practices of Defendant St. Charles County.

5. Plaintiffs request money damages against St. Charles County and the Defendant officers in their individual capacities for injuries caused by Defendants' unconstitutional actions and customs.

## JURISDICTION AND VENUE

6. This is a civil rights action arising under 42 U.S.C. § 1983 and the First, Eighth, and Fourteenth Amendments to the United States Constitution. The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), because the Defendants are located in this District and the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

8. Plaintiff Eric Smith is a 40-year-old Black man and resident of St. Louis County, Missouri. In 2017, Mr. Smith turned himself in to police on an outstanding municipal violation. The judge found that Mr. Smith was unable to pay his fines and sentenced him to twelve days in SCCJ and a $75 fine. At SCCJ, Mr. Smith was thrown to the ground by a corrections officer and suffered a head injury that has had lasting detrimental effects on Mr. Smith.

9. Plaintiff Alleadhin Qandah is a 31-year-old Arab-American and Muslim man and was a

resident of St. Louis County, Missouri at all relevant times. Mr. Qandah was a pretrial detainee in SCCJ from March 2014 to February 2015. During this period, Mr. Qandah was subjected to various constitutional violations, including an attack by a fellow inmate facilitated by a corrections officer. Additionally, Mr. Qandah spent approximately eight months in solitary confinement. Throughout his entire stay, Mr. Qandah was subjected to harassment by corrections officers based on his religious identity, race, and national origin.

10. Defendant St. Charles County ("County") is a political and geographic subdivision of the State of Missouri existing pursuant to Missouri law and responsible for the operations at SCCJ through the St. Charles County Department of Corrections.

11. Defendant Lieutenant Michael McKee was a lieutenant employed by St. Charles County during Mr. Qandah's relevant period of incarceration at SCCJ. Defendant McKee violated Mr. Qandah's constitutional rights and caused Mr. Qandah's injury by authorizing his solitary confinement and failing to provide Mr. Qandah with treatment for a serious medical need. Defendant McKee is being sued in his individual capacity.

12. Defendant Jeffery Cast was a corrections officer employed by St. Charles County during Mr. Qandah's relevant period of incarceration at SCCJ. Defendant Cast violated Mr. Qandah's constitutional rights and caused Mr. Qandah's injuries by unlocking a cell door so that an inmate could enter and attack Mr. Qandah. Defendant Cast also verbally abused and discriminated against Mr. Qandah based on his religion, race, and national origin. Defendant Cast is being sued in his individual capacity.

13. Defendant Jake Gillett was a corrections officer employed by St. Charles County while Mr. Smith was incarcerated at SCCJ. Defendant Gillett violated Mr. Smith's constitutional rights by slamming Mr. Smith's head into a stool, causing a severe brain injury. Defendant Gillett is

being sued in his individual capacity.

14. Defendant Clinton Graebner was a corrections officer employed by St. Charles County during Mr. Qandah's relevant period of incarceration at SCCJ. Defendant Graebner violated Mr. Smith's constitutional rights and caused Mr. Qandah's injuries by failing to provide Mr. Qandah with treatment for a serious medical need. Defendant Graebner is being sued in his individual capacity.

## FACTS

### Eric Smith's Assault by a St. Charles County Corrections Officer, Deprivation of Medical Care at SCCJ, and Continuing Harm

15. Plaintiff Eric Smith was incarcerated at SCCJ from January 12, 2017 to January 24, 2017.

16. On January 18, 2017, Mr. Smith was playing cards in one of the dormitory areas of the SCCJ. Mr. Smith and another inmate got into a fight.

17. As Mr. Smith stepped away from the fight, he was grabbed from behind by a corrections officer who slammed Mr. Smith's head against a metal stool as he threw him to the ground.

18. Mr. Smith suffered deep lacerations above his left eyebrow. Mr. Smith's head was bloodied and he felt throbbing and burning sensations. An on-site nurse bandaged the wounds.

19. Eventually, Mr. Smith was transported to St. Joseph Hospital, where he received stitches and a prescription for pain medication.

20. Upon his return to SCCJ, Mr. Smith asked to fill out an incident report. A corrections officer initially refused to give him the necessary paperwork. Mr. Smith was eventually given a form, but he received no response to his grievance.

21. On January 20, 2017, Mr. Smith became dizzy and light-headed. He told SCCJ officials about his symptoms, but they failed to assist him or deliver medical assistance. Mr. Smith then

fainted, but SCCJ officials left him in his cell without medical assistance.

22. For the remainder of his SCCJ incarceration, Mr. Smith was in ongoing pain. The pain was the worst Mr. Smith had ever experienced. Mr. Smith repeatedly told the SCCJ corrections officers he was in extreme pain, but Defendant Graebner and other staff repeatedly refused to offer him medical attention. After approximately thirty-six hours in a cell alone and in pain, he was finally given only a watery ice pack.

23. Immediately after Mr. Smith was released from SCCJ on January 24, 2017, he went to the records division at SCCJ and filled out another incident report.

24. Immediately after his release from SCCJ, Mr. Smith visited the St. Joseph Hospital emergency room for suture removal and to address his excruciating head pain. Mr. Smith also reported his January 20 fainting spell to emergency room staff during this visit.

25. Continuing to be in pain and believing that he had been seriously injured and not properly treated, Mr. Smith subsequently visited his primary care physician and was referred to a neurologist. He was diagnosed with a subdural hematoma that resulted in surgery.

**Alleadhin Qandah's Attack Facilitated by SCCJ Officials and Extended Detention in Solitary Confinement Resulting in Pretrial Punishment and Harm**

26. Plaintiff Alleadhin Qandah was detained at SCCJ from March 2014 to February 2015.

27. Mr. Qandah experienced harassment throughout his detention. SCCJ officers called Mr. Qandah "terrorist," "camel jockey", and "ISIS" and told him "if you don't like the laws here, go back to where you came from." Corrections officers made public comments to inmates and over the jail intercom identifying Mr. Qandah as a "snitch." As a result, Mr. Qandah was threatened by several inmates, including inmate Kionte Ballinger.

28. Mr. Qandah reported this harassment by corrections officers through multiple complaints directed to Defendant Lieutenant McKee. No one from SCCJ ever followed up on a complaint, nor were any officers disciplined for their actions.

29. On May 31, 2014 Mr. Qandah was placed in solitary confinement, where he remained for approximately eight months.

30. Corrections officers told Mr. Qandah he was in solitary "pending an investigation." Mr. Qandah was never told formally why he continued to be detained in solitary confinement, nor was he allowed to appeal the decision.

31. While in solitary confinement, Mr. Qandah was alone in his cell for 23 hours per day. Mr. Qandah experienced more restrictive conditions of confinement than other similarly-situated inmates who were often allowed out of their cells for up to four hours per day.

32. The extended period of solitary confinement served no penological purpose and was intended to punish him because of his religion, race, and national origin.

33. The cumulative abusive and targeted nature of Mr. Qandah's treatment also rises to a standard of malicious and reckless indifference.

34. Defendant McKee went to Mr. Qandah's cell and told him "you're not getting out."

35. Defendant Cast has demonstrated an open animosity towards Muslims. In February 2017, Defendant Cast posted at least six Islamophobic and xenophobic images to his Facebook page. Specifically, Defendant Cast shared posts accusing immigrants of wanting to "replace the American Constitution with Sharia law" and portraying Muslims as wishing "Death to America." All of these posts were publicly available until Defendant Cast made his Facebook profile private. Defendant Cast's posts are incorporated herein as Exhibit 2.

36. On December 15, 2014, another inmate in solitary confinement, Kionte Ballinger,

6

asked Defendant Cast to unlock Mr. Qandah's cell door. SCCJ housed inmates in solitary confinement due to safety risk; Defendant Cast knew or should have known that allowing one solitary confinement inmate into the cell of another posed a substantial risk of harm. Yet, fueled by animus related to Mr. Qandah's Muslim faith, Defendant Cast unlocked Mr. Qandah's cell and allowed Ballinger to violently assault Mr. Qandah.

37. Ballinger entered Mr. Qandah's cell and threw him to the floor, causing Mr. Qandah's head to strike a metal toilet. After the initial shock of being attacked, Mr. Qandah was able to hold off Ballinger to stop the attack.

38. Around two minutes after Ballinger began attacking Mr. Qandah, corrections officers, including Defendant Cast, entered the cell. By this point, the two detainees were no longer fighting. As Ballinger was removed from Mr. Qandah's cell, Ballinger turned around and yelled "Snitch!"

39. Mr. Qandah sustained a number of psychological and physical injuries, including abrasions, a concussion, a black eye, and pain in his jaw. Mr. Qandah visited the on-site nurse on December 17, 2014 due to lower back pain and strain.

40. Mr. Qandah requested that pictures be taken of his injuries immediately following the attack, but SCCJ officials refused to take pictures until two days after the attack occurred.

41. Mr. Qandah did not receive medical treatment to alleviate his considerable pain, despite the fact that Mr. Qandah made written requests to Defendant McKee several times a week. Defendant McKee and his staff also ignored Mr. Qandah's numerous verbal requests for medical care, perpetuating his suffering.

42. The St. Charles Sheriff's Department ordered an investigation.

43. During the Sheriff Department's investigation, Ballinger stated that he asked Defendant Cast to open Mr. Qandah's cell so he could "holla at dude" and that Defendant Cast hesitated,

grinned, and then "gave me the ok" and opened the door.

44. Defendant Cast was never disciplined despite acknowledgement by supervisors that his actions were inappropriate.

45. After the attack, Ballinger was moved to another part of the jail, but was not placed in solitary confinement. Mr. Qandah remained in solitary confinement.

46. Mr. Qandah explained the psychological consequences of his long periods in solitary confinement to SCCJ's psychologist. He specifically explained that he felt like he could not breathe while detained in solitary. The psychologist told Mr. Qandah that she informed SCCJ supervisors, including Defendant McKee, of Mr. Qandah's struggles. She also told Mr. Qandah that she had never seen an inmate held in solitary for as long as he was held and that she was worried he would harm himself due to his lengthy time in solitary. In fact, Mr. Qandah suffered ill effects of solitary confinement and, on at least one occasion, had to be taken to medical because he almost passed out in his cell.

47. Mr. Qandah did not have these physiological or psychological issues before his incarceration at the SCCJ.

### History of Unconstitutional Conduct at SCCJ

48. The St. Charles County Jail maintains a culture characterized by a lack of training, supervision, and discipline that has led to repeated victimization of inmates.

49. Past instances of harm demonstrate a clear custom and/or policy of overt mistreatment of inmates and deliberate indifference to the constitutional rights of inmates in SCCJ custody.

50. Since 2013, there have been at least three lawsuits arising out of incidents in which SCCJ officials either encouraged inmates to attack one another or failed to intervene during attacks. *See, e.g., Burnett v. St. Charles County Jail/D.O.C. et al.*, Docket No. 4:13-cv-01990 (E.D. Mo. Oct. 2014) (SCCJ corrections officer smiled as inmate was assaulted and SSCJ then failed to

transport inmate to receive medical treatment for serious injuries); *see also Goodson v. Cty. of St. Charles Dep't of Corr.*, No. 4:14-CV-1845-NCC, 2015 WL 58947, at *2 (E.D. Mo. Jan. 5, 2015) (SCCJ corrections officer unlocked inmate's cell so that the inmate's co-defendant and others could assault him); *see also Wilga v. Crawford*, No. 4:17-CV-1457 CDP, 2017 WL 3034715, at *1 (E.D. Mo. July 18, 2017) (SCCJ officials allowed a dangerous inmate out of his cell and ignored complaints about the resultant assault).

51. At least two additional lawsuits alleged failure to protect. *See, e.g., Roland v. Cnty. Of St. Charles,* 4:15-cv-00966 (E.D. Mo. Sept. 21, 2015) (SCCJ officials shared an inmate's grievances with other inmates, who then labelled him a "snitch," robbed him, and threatened him); *see also Williams v. Crawford*, No. 4:17-CV-1475-AGF, 2017 WL 3392119, at *3 (E.D. Mo. Aug. 7, 2017) (SCCJ inmates suffered serious harm from fights precipitated by understaffing).

52. St. Charles County also has a pattern of failing to provide adequate medical care to inmates. *See, e.g., Breeding v. St. Charles*, Docket No. 4:15-cv-00539-RWS (E.D. Mo. Aug. 3, 2017) (after five days of repeatedly requesting and being denied medical care, inmate died in SCCJ custody); *see also Williams v. Crawford*, No. 4:17-CV-1475-AGF, 2017 WL 3392119, at *3 (E.D. Mo. Aug. 7, 2017) (inmate experiencing mental health difficulties was repeatedly denied medical treatment and food, was left in isolation for extended periods, and was physically assaulted by SCCJ officers and fellow inmates while handcuffed to a table).

53. SCCJ has a culture of lack of accountability for its officers. Officers searched cells without cause, tossing inmates' belongings around. Officers also unnecessarily buzzed the intercom and deliberately turned lights on and off to disrupt inmates' sleep. Furthermore, *pro se* civil rights complaints frequently allege that SCCJ fails to investigate or act upon inmate written and oral grievances.

54. Individuals also repeatedly describe the over use of solitary confinement.

55. These abuses additionally have a racial component. Incarceration rates in SCCJ mirror broader regional patterns of over-incarceration of non-White communities.

## CLAIMS FOR RELIEF

### COUNT I

**Fourteenth Amendment Claim for Deliberate Indifference Resulting in Punishment to Pretrial Detainee Cognizable under 42 U.S.C. § 1983 by Mr. Qandah Against Defendant Cast**

56. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

57. Under the Fourteenth Amendment to the United States Constitution, Mr. Qandah has a right to be free from pretrial punishment. This right was violated when Mr. Qandah suffered injuries resulting from Defendant Cast's deliberate indifference to a substantial risk of serious harm.

58. Defendant Cast's act of unlocking Mr. Qandah's cell door so that another inmate could attack Mr. Qandah amounted to deliberate indifference to a substantial risk of serious harm to an inmate. Mr. Qandah was in fact harmed due to Defendant Cast's action.

60. Defendant Cast's conduct was malicious and recklessly indifferent. At the very least, Defendant Cast knew that unlocking Mr. Qandah's cell door to allow another inmate to enter subjected Mr. Qandah to a substantial risk of harm. Due to his contempt for Muslims, Defendant Cast electronically unlocked the door, allowing the inmate to attack Mr. Qandah. Mr. Qandah was in fact harmed due to Defendant Cast's action.

61. Defendant Cast told Mr. Qandah, "Muslim culture is fake." Mr. Qandah who is a U.S. citizen, was also told that if he did not like certain prison conditions, he should go back to the

country he was from.

62. Qualified immunity does not protect the Defendant Cast from suit because their deliberate actions clearly violate Mr. Qandah's well-established constitutional rights.

63. If Mr. Qandah prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT II
### Fourteenth Amendment Claim for Deprivation of Medical Care Amounting to Cruel and Unusual Punishment Cognizable under 42 U.S.C. § 1983 by Mr. Qandah Against Defendant McKee

64. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

65. The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

66. A plaintiff sufficiently alleges a claim for deliberate indifference to a serious medical need by showing he suffered from an objectively serious medical condition and that prison officials were deliberately indifferent to that condition. *Thompson v. King*, 730 F.3d 742, 747 (8th Cir.2013); *Id*.

67. Here, Mr. Qandah suffered serious psychological injury and physical injuries to his face, jaw, and back when an inmate battered him after Defendants allowed the inmate into Mr. Qandah's cell.

68. Following the attack, Mr. Qandah submitted written requests for medical treatment, directly to Defendant McKee, several times a week. Mr. Qandah also directed verbal requests to Defendant McKee and the SCCJ staff Defendant McKee supervised.

69. Though aware of Mr. Qandah's serious need for medical care, Defendant McKee

ignored Mr. Qandah's numerous requests for treatment, acting maliciously and with reckless indifference.

70. Mr. Qandah continues to suffer from injuries sustained during the attack.

71. Qualified immunity does not protect Defendant McKee from suit because failure to provide proper medical care constitutes punishment for pretrial detainees in clear violation of Mr. Qandah's constitutional rights.

72. If Mr. Qandah prevails, he is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### COUNT III
### Eighth Amendment Failure to Provide Proper Medical Care Resulting in Cruel and Unusual Punishment of Prisoners Cognizable under 42 U.S.C. § 1983 by Mr. Smith Against Defendant Graebner

73. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

74. The Eighth Amendment to the United States Constitution protects inmates from deliberate indifference to their serious medical needs when Defendants are aware of such medical need. *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011).

75. Mr. Smith suffered from a severe medical need after his head was slammed into a metal stool. Mr. Smith's injuries were clearly known to SCCJ staff, including Defendant Graebner, as Mr. Smith began to bleed from the head and complained of extreme discomfort. Mr. Smith additionally shared details of his injury and his ongoing pain with the SCCJ nurse and hospital personnel.

76. Further, Defendant Graebner failed to administer the pain medication Mr. Smith was prescribed after his assault. Defendant Graebner acted maliciously and deliberately indifferent to Mr. Smith's medical needs.

77. Defendant Graebner had knowledge of Mr. Smith's serious injury and deliberately disregarded Mr. Smith's medical condition. This deprivation of medical care exacerbated Mr. Smith's medical condition.

78. Qualified immunity does not protect Defendant Graebner from suit as Mr. Smith clearly suffered a serious medical condition and Defendant Graebner knew of and deliberately disregarded the condition, in clear violation of Mr. Smith's constitutional rights.

79. If Mr. Smith prevails, he is entitled to an award of attorneys' fees, pursuant to 42 U.S.C. § 1988.

## COUNT IV

**Eighth Amendment Excessive Force Resulting in Cruel and Unusual Punishment of Prisoners Cognizable under 42 U.S.C. § 1983 by Mr. Smith Against Defendant Gillett**

80. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

81. Defendant Gillett used unreasonable force against Mr. Smith when he intentionally lifted Mr. Smith and slammed his head into a metal stool. Defendant Gillett's use of force was intended to harm Mr. Smith, not to serve a legitimate, penological purpose.

82. Qualified immunity does not protect Defendant Gillett from suit, as slamming an inmate without justification constitutes cruel and unusual punishment, in clear violation of Mr. Smith's constitutional rights.

83. If Mr. Smith prevails, he is entitled to an award of attorneys' fees, pursuant to 42 U.S.C. § 1988.

## COUNT V

**Missouri Common Law Battery Claim Against Defendant Gillett by Mr. Smith**

84. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

85. Defendant Gillett intentionally acted to cause injury and harm to Mr. Smith when he grabbed Mr. Smith from behind, lifted him, and slammed his head into a hard metal stool.

86. Defendant Gillett's actions caused immediate and ongoing injury to Mr. Smith's head and brain.

87. As a direct and proximate result of the unlawful conduct of Defendant Gillett described above, Mr. Smith was made to suffer severe pain and psychological anguish, which continue to this day.

88. Defendant Gillett's actions were willful, wanton, and done with malice such that, pursuant to R.S.Mo. § 510.265, punitive damages should be awarded in favor of Mr. Smith and against Defendant Gillett in an amount of $500,000 or five times the net amount of the judgment awarded to Mr. Smith against Defendant Gillett, to punish Defendant Gillett's deplorable conduct and to deter Defendant Gillett and others from engaging in such behavior in the future.

## COUNT VI

**Municipal Liability *Monell* Claim by Mr. Qandah and Mr. Smith Against Defendant St. Charles County for Failure to Supervise, Train, Investigate Complaints, and Discipline**

89. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

90. It is and has been Defendant St. Charles County's policy, practice, and custom to inadequately train and supervise SCCJ officers in order to maintain safe conditions.

91. Defendant St. Charles County has also failed to discipline SCCJ officers for clear violations of jail policies and inmates' constitutional rights.

92. Defendant County is therefore culpable for the constitutional violations set forth in Counts I through IV, above, pursuant to *Monell v. N.Y. Dep't of Soc. Svcs,* 436 U.S. 658 (1978).

93. In addition, Defendant County has ratified the unsafe treatment of detainees by failing

to respond to allegations of medical deprivation or harm to detainees and inmates.

94. This failure to train and supervise was a cause of Plaintiffs' injuries.

95. It is and has been the policy, practice, and custom of Defendant County to inadequately investigate complaints brought by detainees and to fail to discipline SCCJ officers who commit violations of detainees' rights. To the contrary, the County has instead ratified the unsafe treatment of SCCJ detainees through their customary or policy-mandated conduct putting individuals incarcerated at SCCJ in harmful situation. Defendants' failure to investigate complaints and failure to hold officials' accountable for misconduct is a cause of Plaintiffs' injuries as a culture of non-accountability promoted harmful conduct at SCCJ.

96. Each of these failures as described above constitute the official policies and customs of Defendant St. Charles County, which are all deliberately indifferent to the violation of rights of SCCJ detainees.

97. Each of the above-described policies and customs of Defendant St. Charles County were the moving force behind the constitutional violations performed against Plaintiffs in Counts I through III and were the direct and proximate cause of the violations of Plaintiffs' rights as alleged herein, as well as damages.

98. If Plaintiffs prevail, they are entitled to an award of their attorneys' fees, under 42 U.S.C. § 1988.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a. Enter judgment in favor of each Plaintiff against each Defendant as set forth above;

b. Enter judgment in Count V in favor of each Plaintiff against Defendant St. Charles County for its *Monell* liability for the actions of the individual Defendants described in Counts I through IV;

c. Award each Plaintiff monetary damages, including their actual damages and compensatory damages, as the Court deems appropriate, pursuant to 42 U.S.C. § 12133 and 29 U.S.C. §794a;

d. Award each Plaintiff punitive damages for Counts I through V against the individually named defendants, in their individual capacities, to be determined by a jury;

e. Award Plaintiffs all litigation costs, expenses, and attorneys' fees recoverable under federal law, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794a, in Counts I, II, III, IV, and VI; and

f. Allow such other and further relief as this Court deems just and proper.

Dated: December 11, 2019

Respectfully submitted,

**ARCHCITY DEFENDERS, INC.**
By: /s/ *Maureen Hanlon*
Blake A. Strode (MBE #68422MO)
Michael-John Voss (MBE #61742MO)
John M. Waldron (MBE #70401MO)
Frances C. Lucas (MBE #71314MO)
Samuel Henderson (MBE # 56330MO)
Maureen Hanlon (MBE #70990MO)
440 N. 4th Street Suite 390
Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
mjvoss@archcitydefenders.org
jwaldron@archcitydefenders.org
clucas@archcitydefenders.org
mhanlon@archcitydefenders.org

AND

**KHAZAELI WYRSCH LLC**
James R. Wyrsch, 53197MO
Javad M. Khazaeli, 53735MO
Kiara N. Drake, 67129MO
911 Washington Ave #211
Saint Louis, MO 63101

314-288-0777
314-400-7701 (fax)
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com
kiara.drake@kwlawstl.com

*Attorneys for Plaintiffs*