UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:18CV171 JCH |
| | ) |
| ST. CHARLES COUNTY, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint, filed May 22, 2020. (ECF No. 122). The motion is fully briefed and ready for disposition.

### BACKGROUND

In or around January, 2017, Plaintiff Eric Smith turned himself in to St. Charles County Jail ("SCCJ"), to serve a 12-day sentence for a traffic violation. (Plaintiff Eric Smith's Statement of Additional Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Additional Facts"), ¶ 2). On January 18, 2017, Plaintiff was playing cards in one of the dormitory areas of SCCJ with several inmates, including Richard Washington ("Washington"). (*Id.*, ¶ 5). After earlier accusing Plaintiff of stealing his belongings, Washington stood up and said about Plaintiff, "I'm about to punch this n----- in his shit." (*Id.*, ¶¶ 6, 7). Plaintiff understood this to be a threat, and therefore took a swing at Washington, which Washington blocked. (*Id.*, ¶¶ 8, 9). Plaintiff and Washington then tussled on the ground. (*Id.*, ¶ 10).

Officer Barbier sprayed mace at Plaintiff and Washington to break them apart, which resulted in mace pouring into Plaintiff's ear. (Plaintiff's Additional Facts, ¶ 11). Plaintiff claims he attempted to comply with the order to break up the fight, but could not because Washington had his hands locked around him. (*Id.*, ¶ 12).[1] The correctional officers present grabbed Washington's fingers, pulled the two inmates apart, and placed Washington on the ground. (*Id.*, ¶ 14). Plaintiff claims he then stood and backed up, with his arms in the air. (*Id.*, ¶ 15). Without giving any verbal warning, Plaintiff asserts Defendant Jake Gillet ("Gillet") grabbed him from behind, and threw or tackled Plaintiff to the ground in a violent takedown maneuver. (*Id.*, ¶¶ 17, 23-25). According to Plaintiff, Gillet slammed Plaintiff's head into a metal stool in the performance of the takedown maneuver, resulting in Plaintiff's bleeding from an injury above one of his eyebrows. (*Id.*, ¶¶ 26, 28, 30).[2]

A nurse arrived at the scene to evaluate Plaintiff, and put a gauze pad and tape on his bleeding wound. (Plaintiff's Additional Facts, ¶ 31). The nurse instructed the correctional officers, including Defendant Clinton Graebner ("Graebner"), to take Plaintiff to the medical department, and thereafter the nurse, Graebner and another officer escorted Plaintiff to medical. (*Id.*, ¶¶ 33-34). Officer Oliver eventually transported Plaintiff to St. Joseph Hospital, where

---

[1] In his Use of Force Report, CPO Oliver stated that after the oleoresin capsicum spray was deployed, Plaintiff put his hands down, but Washington continued to fight. (*See* ECF No. 150-3, P. 8).

[2] Gillet disputes Plaintiff's accounting of the incident. According to Gillett, he engaged Plaintiff and used a pressure point control tactic known as a "straight arm takedown" to assist him to the ground, because Plaintiff was actively engaged in a fight. (Defendants' Responses to Plaintiff's Additional Facts, ¶¶ 17, 24). Gillet testified he intervened because Plaintiff's arm was drawn back with a fist clenched, although he admitted he did not believe Plaintiff was fighting him or Officer Oliver, nor did he see Plaintiff use his hand or foot to strike anyone. (*Id.*, ¶¶ 18-19, 21). Plaintiff maintains SCCJ failed properly to investigate the incident (or to discipline Gillet), as it neither took statements from Plaintiff, Washington or other inmate witnesses, nor addressed inconsistencies between Gillet's and Oliver's use of force reports. (Plaintiff's Additional Facts, ¶¶ 80-83).

Plaintiff claims the officer downplayed his injury to the two nurses treating Plaintiff. (*Id.*, ¶¶ 36-37). The hospital sutured Plaintiff's wounds and gave him medication for his pain, and while the nurse stated he thought Plaintiff needed stronger medication than Motrin, he said he was limited in what he could provide to the jail. (*Id.*, ¶¶ 39-40). The nurse indicated Plaintiff should take Motrin and receive an ice pack every few hours, and Defendants admit SCCJ is responsible for providing follow-up care once an inmate leaves the hospital. (*Id.*, ¶¶ 41-42).

Following his return from the hospital, Plaintiff was taken to Unit J, the unit at SCCJ used for disciplinary segregation of inmates. (Plaintiff's Additional Facts, ¶ 49). Plaintiff claims that after returning from the hospital his condition worsened, and he experienced pain, fatigue, nausea, dizziness, and light-headedness. (*Id.,* ¶ 55). Despite this, Plaintiff was not given the pain medication he was prescribed; in fact, the only medication sheet in Plaintiff's file shows no mention of the medication and no attempts to provide any to him. (*Id.*, ¶¶ 56-57).[3] Plaintiff alleges he told Graebner about his feelings and symptoms, and repeatedly asked for his ice pack and medicine, but he never received the pain medication he was prescribed. (*Id.*, ¶¶ 58-59, 62).[4] Plaintiff further maintains he filled out both a grievance form and a medical concern form, complaining about the assault and not receiving his medication or ice pack, but never received a response to the forms despite submitting them to Graebner. (*Id.*, ¶¶ 60-62). Plaintiff testified that after filling out the medical concern form he started feeling fatigued, light-headed, and dizzy; that he saw "floaters and little dots"; and that he passed out and woke up on the floor.

---

[3] Defendants admit that nursing staff is required to record any medication given on a paper medication sheet, to ensure the medication was given, and that the sheet is kept with the paper medical chart for the inmate and saved for ten years. (Plaintiff's Additional Facts, ¶¶ 46-47).

[4] Plaintiff maintains that between returning from the hospital on January 18, 2017, and being released from SCCJ on January 24, 2017, the only two forms of medical treatment he received were a watery ice pack provided on January 19, 2017, and an appointment to check his sutures on January 23, 2017. (Plaintiff's Additional Facts, ¶¶ 63, 68).

(*Id.*, ¶ 66). According to Plaintiff, when he informed Graebner that he had passed out, Graebner simply replied "Oh," and continued walking past Plaintiff's cell. (*Id.*, ¶ 67).

Upon his release from SCCJ, Plaintiff visited the St. Joseph Hospital emergency room for suture removal and to address his excruciating head pain. (Plaintiff's Additional Facts, ¶ 70). He was immediately referred for an MRI and a neurologist appointment, and after Plaintiff's primary care physician received and reviewed his MRI results, the physician told Plaintiff the results were so concerning that he needed to go to the hospital immediately. (*Id.*, ¶¶ 71-72). Plaintiff was diagnosed with a subdural hematoma that resulted in a 12-hour emergency surgery. (*Id.*, ¶ 73). The surgeon explained that Plaintiff's injury caused a small bleed in Plaintiff's brain, and the blood accumulating in his brain was causing intense pressure. (*Id.*, ¶ 74). The surgeon further explained that to relieve the pressure, he would have to do a burr hole brain drain evacuation, drilling two dime-sized holes in Plaintiff's head and inserting a hose to drain the blood. (*Id.*, ¶ 75). Plaintiff claims he continues to suffer from the effects of his injury today, with symptoms including headaches, fatigue, increased forgetfulness and agitation, slurred speech, and body aches. (*Id.*, ¶ 76).

Plaintiff filed his original Complaint in this matter on January 31, 2018. (ECF No. 1).[5] In his Second Amended Complaint, filed March 10, 2020, Plaintiff lodges the following causes of action: Eighth Amendment Failure to Provide Proper Medical Care Resulting in Cruel and Unusual Punishment of Prisoners Cognizable under 42 U.S.C. § 1983 against Defendant Graebner (Count I); Eighth Amendment Excessive Force Resulting in Cruel and Unusual

---

[5] Plaintiff originally filed his Complaint with co-Plaintiff Allaedhin Qandah. On January 13, 2020, the Court severed the two cases, finding the claims and parties were distinct as to each individual Plaintiff, and that separating the claims would expedite the litigation process by limiting the scope of inquiry to events related to the individual claims of each Plaintiff. (*See* ECF No. 109).

Punishment of Prisoners Cognizable under 42 U.S.C. § 1983 against Defendant Gillet (Count II); Missouri Common Law Battery Claim against Defendant Gillet (Count III); and Municipal Liability *Monell*[6] Claims against Defendant St. Charles County for Failure to Supervise, Train, Investigate Complaints, and Discipline (Count IV).  (ECF No. 121).

As noted above, Defendants filed the instant Motion for Summary Judgment on Plaintiff's Second Amended Complaint on May 22, 2020, claiming there exist no genuine issues of material fact, and they are entitled to judgment as a matter of law on all counts of Plaintiff's Second Amended Complaint.  (ECF No. 122).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant.  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); *Anderson*,

---

[6] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

### I. Qualified Immunity

United States District Judge Rodney W. Sippel of this Court recently provided a detailed analysis of the doctrine of qualified immunity, which the Court quotes at length here:

> Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).
>
> To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).
>
> "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general

> constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotations marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

*Smalley v. Gamache*, No. 4:10CV319 RWS, 2013 WL 1149146, at *2 (E.D. Mo. Mar. 19, 2013) (footnote omitted).

### A. Officer Graebner

As stated above, in Count I of his Second Amended Complaint Plaintiff alleges Graebner violated his civil rights pursuant to 42 U.S.C. § 1983, when he exhibited deliberate indifference to Plaintiff's serious medical needs. (Compl., ¶¶ 73-79). Defendant Graebner maintains he is protected from Plaintiff's claim by qualified immunity. (Memorandum of Defendants in Support of their Motion for Summary Judgment on Plaintiff's Second Amended Complaint ("Defendants' Memo in Support"), PP. 4-7).

As stated above, under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Eighth Circuit further has held that, "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and one condition of confinement is the medical attention given to a prisoner." *Aswegan v. Henry*, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotation marks and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the

Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." *Moots v. Lombardi*, No. 4:02CV1886 CEJ, 2005 WL 4541944, at *5 (E.D. Mo. Feb. 10, 2005) (citing *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)).

There is both an objective and subjective component to a claim of deliberate indifference. "A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs[7] and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotation marks and citation omitted). A prison official acts with the requisite deliberate indifference when that official, "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In their Motion for Summary Judgment, Defendants allege Plaintiff fails to support his claim, as he cannot demonstrate that Graebner directly or personally violated any of his constitutional rights. (Defendants' Memo in Support, PP. 6-7). Specifically, Defendants assert that although Plaintiff claims to have requested pain medication from Graebner, Graebner testified he was not authorized to administer any such medication. Furthermore, Defendants claim "a prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that delays adversely affected his

---

[7] Under Eighth Circuit law, "[a] serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks and citation omitted). Defendants need not understand the specific medical condition afflicting Plaintiff to understand that it is serious, however; instead, symptoms such as falling down, becoming unresponsive, and being unable to answer questions should be obvious to a layperson as indications of a serious medical problem. *See Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016).

prognosis" (*Id.*, P. 7, citing *Holden*, 663 F.3d at 342), and there is no credible evidence in the record indicating that Graebner's alleged failure to provide pain medication adversely affected Plaintiff's prognosis.

In his response, Plaintiff first notes after recently suffering a head trauma[8] of such severity that he was taken to the emergency room, administered stitches and prescribed pain medication, he informed Graebner that he was nauseous, dizzy, light-headed, fatigued, and had recently lost consciousness. (Plaintiff Eric Smith's Response in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opp."), P. 10, citing Plaintiff's Additional Facts, ¶¶ 37, 55, 58). Plaintiff continues to assert that although he attempted to explain his condition, severe pain and need for medication at every opportunity, Graebner ignored his requests for help, leaving Plaintiff in agony. (*Id.*, P. 11).[9]

Upon consideration of the foregoing, the Court finds a genuine issue of material fact remains with respect to whether Defendant Graebner exhibited deliberate indifference to Plaintiff's serious medical need. In other words, the Court finds a reasonable factfinder could conclude Graebner knew of, but deliberately disregarded, a serious medical need when he allegedly ignored Plaintiff's requests for medical assistance. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1055 (8th Cir. 1989) (citations omitted) ("Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically

---

[8] Plaintiff claims Graebner knew he had recently sustained a head injury. (*See* Plaintiff's Opp., P. 11, citing Plaintiff's Additional Facts, ¶¶ 58, 61).

[9] Plaintiff acknowledges that while Graebner cannot be held liable for failing personally to administer his medication, Plaintiff's claim is that Graebner failed to communicate Plaintiff's serious medical need to the medical department. (Plaintiff's Opp., P. 11, citing *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006) (citations omitted) ("A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress, especially one who communicates this distress directly to officers.")).

serious or painful in nature."); *see also Dadd v. Anoka County*, 827 F.3d 749, 755-56 (8th Cir. 2016)). Defendants' Motion for Summary Judgment on Count I of Plaintiff's Second Amended Complaint will therefore be denied.[10]

### B. Officer Gillet

"To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). The "core judicial inquiry" in a suit for excessive use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (internal quotation marks and citation omitted). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." *Treats*, 308 F.3d at 872 (citations omitted). In considering an excessive use of force claim, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton

---

[10] The Court has no problem finding that the constitutional right at issue was clearly established at the time of the allegedly offending conduct, and so Graebner is not entitled to qualified immunity on Plaintiff's claim.

infliction of pain." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013) (quoting *Johnson v. Bi-State Justice Center/Arkansas Department of Corrections*, 12 F.3d 133, 136-37 (8th Cir. 1993)). In weighing these factors, however, the Court is required to "avoid[ ] the improper resolution of credibility issues," which are assessments for the trier of fact and not for summary judgment. *Id.* (quoting *Johnson*, 12 F.3d at 137).

Viewing the facts in the light most favorable to Plaintiff, the Court finds a genuine issue of material fact remains with respect to whether Defendant Gillet utilized excessive force during the incident in question. If Plaintiff's version of events is to be believed, Gillet threw or tackled him to the ground in a violent takedown maneuver, slamming Plaintiff's head into a metal stool in the process, even though Plaintiff was attempting to comply with orders and was backing up with his arms in the air. The Court finds a reasonable jury could conclude that Plaintiff was in compliance with the correctional officers' orders, and posed no threat to the safety and security of the institution when he was assaulted. *Smith v. Conway County, Ark.*, 759 F.3d 853, 860-61 (8th Cir. 2014). "Accepting this version of facts, which is not blatantly contradicted by the record, *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), then any use of force against [Plaintiff] would be gratuitous and a violation of the [Eighth] Amendment." *Id.*

Furthermore, the Court notes that, "[t]he extent of injury may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010). Here, Plaintiff was taken first to the medical unit, and then transported to St. Joseph Hospital, where he received sutures for his wounds. After his release from SCCJ, Plaintiff was diagnosed with a subdural hematoma that resulted in a 12-hour emergency surgery. Under these circumstances, the Court finds that the injury Plaintiff allegedly sustained as a result of his encounter with Gillet was severe, and may support a conclusion that the force used was

excessive. Thus, because Plaintiff has raised a genuine issue of material fact regarding whether Gillet violated a constitutional right, this portion of Defendants' Motion for Summary Judgment on the issue of qualified immunity must be denied.

## II.  **Official Immunity**

Defendants next assert Gillet is entitled to official immunity from Plaintiff's common law battery claim. "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts."  *Reasonover v. St. Louis Cty., Mo*., 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted).  A law enforcement officer's decision to use force in the performance of his duties is discretionary rather than ministerial.  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice", however.  *Davis*, 794 F.3d at 1013 (internal quotation marks and citations omitted).  "A finding of malice requires 'conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive.'"  *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986) (citation omitted)).  "A finding of bad faith embraces more than bad judgment or negligence.  It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."  *Id.* (internal quotation marks and citations omitted).

Upon consideration, the Court finds Plaintiff's allegations state facts from which it could be found that Defendant Gillet acted in bad faith or with malice when he performed a violent takedown on an inmate who was standing with his arms raised above his head to show

submission, in an area where there was an increased risk of severe injury. The Court therefore will deny Defendants' Motion for Summary Judgment based on official immunity.

### III. Municipal Liability

For § 1983 liability to attach to a governmental entity, a plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In their Motion for Summary Judgment, Defendants first claim St. Charles County is entitled to summary judgment as Plaintiff has failed to show a deprivation of his constitutional rights in the first instance. (Defendants' Memo in Support, P. 12). As noted above, however, the Court finds genuine issues of material fact remains as to whether Defendants Graebner and/or Gillet violated Plaintiff's constitutional rights, and so this portion of Defendants' motion must be denied.

Defendants next assert that Plaintiff fails to plead facts identifying an official policy, or a widespread custom or practice, that directly caused the violation of his Eighth Amendment rights. In his Second Amended Complaint, Plaintiff alleges "[i]t is and has been Defendant St. Charles County's policy, practice, and custom to inadequately train and supervise SCCJ officers in order to maintain safe conditions." (Compl., ¶ 90). To state a viable § 1983 claim against the County for failure to train and supervise, Plaintiff must plead facts sufficient to show that (1) the County's officer training and supervision practices were inadequate; (2) the County was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the County's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the County's alleged training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Ultimately, Plaintiff must prove that the County "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (internal quotation marks and citation omitted). Plaintiff may establish County notice of a deficiency in its procedures in one of two ways:

> First, notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious….The second avenue for asserting a failure to train claim arises where the need for additional training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens.

*Thelma D. By and Through Delores A. v. Board Of Educ. Of City of St. Louis*, 934 F.2d 929, 934-35 (8th Cir. 1991) (citations omitted).

As noted above, Plaintiff's Second Amended Complaint alleges "[i]t is and has been Defendant St. Charles County's policy, practice, and custom to inadequately train and supervise SCCJ officers in order to maintain safe conditions." (Compl., ¶ 90). With respect to excessive force, Plaintiff notes the Court has deemed admitted the fact that from 2010 through 2017, St. Charles County did not have policies, protocols, and practices in place to retain, record or track fully inmate complaints made against correctional staff. (*See* ECF No. 144, Sanctions Order). As a result, Plaintiff maintains there was no way for jail supervisors to assess which officers were accruing high numbers of complaints. Plaintiff concludes that through these failures, St. Charles County deliberately established a system wherein the leaders of the facility turned a blind eye to inmates' complaints and allegations of misconduct against correctional officers. (Plaintiff's Opp., P. 16, citing *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Com'rs*, No. 4:10CV2163 CEJ, 2012 WL 3564030, at *10 (E.D. Mo. Aug. 17, 2012) (internal citation omitted) (finding deliberate indifference in an "insulating barrier which prevents notice

of complaints from reaching the [c]ommissioner [d]efendants" because supervisors did not inform the commissioners of employee wrongdoing "even in summary form of the number and subject of [internal affairs] investigations."); *Rohrbough v. Hall*, No. 4:07CV996 ERW, 2008 WL 4722742, at *13 (E.D. Mo. Oct. 23, 2008) (holding that a reasonable jury could find that employee misconduct was an "obvious consequence of" the commissioners' inaction—turning a "blind eye" rather than inquiring into complaints)).

Plaintiff provides evidence that although St. Charles County policy mandates that all incidents where officers use force on inmates be thoroughly documented and reviewed, in reality such review did not always happen[11], and that even when investigations did take place (and the use of unreasonable force was found), the officers often were not disciplined and the use of force was not referenced in their performance reviews.[12] (*See* Plaintiff's Opp., PP. 18-21; *see also* Plaintiff's Facts, ¶ 145 (citing Exh. 15, Crawford Dep. 83:25-84:1) ("Director Crawford testified, 'The use of force happened pretty regularly. Investigations, not so much.'")).[13]

---

[11] Lt. Michael McKee, the operations lieutenant at the jail, testified that during his 30 plus years with St. Charles County, he could remember only four investigations into uses of force. (*See* Plaintiff's Additional Facts, ¶¶ 133, 149).

[12] According to Plaintiff, the investigations did not include interviewing inmates, either those subjected to the force or those who witnessed it, and any use of force reviews that were completed were not kept in the offending officers' personnel files. (See Plaintiff's Opp., PP. 20, 22; Plaintiff's Additional Facts, ¶¶ 83, 129, 144, 164, 168).

[13] Plaintiff asserts there are numerous documented instances of Defendant Gillet himself engaging in uses of force with little oversight and no discipline. (*See* Plaintiff's Opp., P. 23, citing Plaintiff's Additional Facts, ¶¶ 101-132, 168-174). Plaintiff maintains this lack of response from supervisors "reinforced and reassured Defendant Gillet that he would not be fired, suspended, reprimanded, retrained, or otherwise disciplined the next time he decided to use force on inmates….Defendant County's policies, practices, and customs of failing to supervise, train, and discipline its officers enabled, emboldened, and empowered Defendant Gillet to body slam Mr. Smith." (Plaintiff's Opp., PP. 23, 24).

With respect to the provision of medical care, Plaintiff alleges, "Defendant County has ratified the unsafe treatment of detainees by failing to respond to allegations of medical deprivation or harm to detainees and inmates." (Compl., ¶ 93). Plaintiff elaborates that although St. Charles County expects correctional officers to identify medical symptoms and call medical directly in extreme cases, Defendants admit officers receive limited to no training on how to recognize emergency or concerning health symptoms. (Plaintiff's Opp., P. 25). Furthermore, the Court has deemed admitted that from 2010 through 2017, St. Charles County did not have policies, protocols or procedures in place to retain, record and track fully inmate complaints of being denied medical care. (*See* ECF No. 144, Sanctions Order). [14]

Upon consideration, the Court finds that with these allegations Plaintiff presents evidence from which a reasonable jury could conclude Defendant County had notice of a pattern of unconstitutional acts committed by correctional officers with respect to both utilizing excessive force and denying proper medical care. Plaintiff further presents evidence that Defendant County adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, that these training practices were the product of the County's deliberate and conscious choices, and that the practices proximately caused Plaintiff's injury. Defendants' Motion for Summary Judgment on Plaintiff's *Monell* claims will therefore be denied.

---

[14] Lt. McKee testified that the most frequent complaint he hears from inmates' loved ones and attorneys is that inmates are not able to receive medical attention. (Plaintiff's Additional Facts, ¶ 271, citing McKee I Dep. 68:1-11).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' Motion for Summary Judgment on Plaintiff's Second Amended Complaint (ECF No. 122) is **DENIED**.

Dated this  26th  Day of January, 2021.

/s/ Jean C. Hamilton<br>
UNITED STATES DISTRICT JUDGE